TAYLOR, Associate Justice.
The record before us presents the history of involved financial transactions fol *206 lowed by protracted • litigation, much of which is not material to a consideration of the correctness of the decree attacked in this proceeding. It is, however, necessary to outline the facts briefly and develop the chronology of the events in order to determine the rights of the parties.
On March 25, 1952, petitioner, Benjamin Scheiner, as plaintiff, filed his original complaint against Anthony Damiano, Adamco,.Inc., a corporation hereinafter referred to as Adamco, and Darling Ice Cream Co., Inc., a corporation hereinafter referred to as Darling. The purpose of the suit was to recover certain moneys advanced to Damiano in connection with certairj. contracts for the purchase by Scheiner from Damiano of half of the stock of Adamco and Darling, which money, it is alleged, was used for the benefit of the corporations. The prayer of the complaint was for the establishment and enforcement of an equitable lien upon the assets of the two corporations.
On April 1, 1952, at plaintiff’s request, a receiver of the two corporations was appointed and authorized to operate their businesses.
After voluminous pleadings, and testimony (which is not before us) taken before the Court, the Circuit Court, on December 21, 1953, entered a final decree in favor of plaintiff. We must assume that this decree was based upon proof of the allegations of plaintiff’s pleadings, among which are; that Damiano owned all the stock of Adamco and ninety per cent of the stock of Darling; that ■each of these corporations was an alter ego of Damiano, and that Scheiner and Damiano had agreed that the assets of these corporations were worth $145,000 subject to some possible adjustments. •
The decree found plaintiff was entitled to a lien upon the assets of the two corporations to secure payment of $35,782, and directed the receiver to sell the assets of the corporation to liquidate this -indebtedness, sale to be made December 28, 1953.
The sale was conducted as ordered, and plaintiff .became the highest bidder for the sum of $75,000. But plaintiff failed to complete the purchase.
On January 28, 1954, the receiver reported to the Court that an examination of abstracts disclosed a series of mortgages on the assets of the corporations, a first mortgage' which had been purchased by plaintiff, a second mortgage which had been purchased by plaintiff, a third mortgage which had been assigned to plaintiff as trustee for named parties, and a fourth mortgage to Damiano. Some controversy had. arisen as to priorities as between these mortgages. The receiver asked for instructions.
On January 28, 1954, the Court entered an order settling the priorities of these mortgages and providing that the mortgage to Damiano be satisfied by crediting the amount thereof on the lien previously decreed in favor of plaintiff. In this order the Court directed the' receiver to give plaintiff a deed and bill of sale to all the assets of Adamco and Darling upon the payment of costs in foreclosure proceedings involving the mortgages in question, an amount necessary to pay certain receiver’s certificates then outstanding, and the costs of the proceeding, including receiver’s fees.
Instead of' complying with this decree, plaintiff filed what he designated a “petition for Audit, Inventory, and Accounting of Receivership” in which he attacked the policies and practices of the receiver in the operation of the business of the corporate defendants. This petition contains an averment that “your petitioner is now the owner and holder of all of the stock of Adamco, Inc., and ninety per cent of the stock of defendant Darling Ice Cream Co., Inc., and is the holder of all mortgages against said property, and in addition thereto an equitable lien' encumbering said property as adjudicated by this Court on December 21, A.D., 1953.” Of necessity, this stock was acquired from Damiano.
On March 16, 1954, the Court denied the petition last mentioned, and ordered the *207 receiver to resell the property on March 29, 1954. This decree provided that if plaintiff became the purchaser at the second sale he should be required to pay only costs in this case, and the foreclosure proceedings involving the mortgages and the receiver’s certificates and fees and the receiver’s attorney’s fees.
On March 22, 1954 plaintiff filed petition for leave to complete his bid made at the first sale and pay only the items above mentioned.
On March 22, 1954 the Court entered an order granting this petition and directing the receiver to execute conveyances of the property to plaintiff upon these payments being made. This was done.
On July 28, 1954 the receiver filed his final report, in which, for apparently the first time, attention is given to the interests of the unsecured creditors of Adamco and Darling. The report discloses that there are obligations that were owed by the corporations and obligations incurred during receivership which have not been paid or'.provided for. ,<Some items of 'Court'basts' are also reported as unpáid-. ■
The receiver’s report also alleges that the- bill of sale from the receiver to plaintiff provides that the accounts receivable of the corporations “were not conveyed by said bill of sale unless the grantee would assume accounts payable,”' and that plaintiff had taken possession -of all the assets of the corporations and collected some of the accounts receivable.
The receiver then prayed for a decree that plaintiff be estopped from denying liability for the debts of the corporations and the receivership, and that the Court place a lien on all of the assets of said corporations for the amount due creditors of the corporations and. the receivership.
Plaintiff filed objections to this report and denied that he had. collected any accounts receivable of the corporations.
The Court, on August 26, 1954, without taking testimony, entered an order decreeing that certain named creditors of the corporations be granted liens in specified amounts upon the assets of the corporations in the hands of plaintiff.
It is from this decree that the plaintiff seeks relief by certiorari.
When plaintiff sought the aid of a Court of Equity he based his plea upon the theory that Adamco and Darling were the alter ego of the stockholder, Damiano, so that their separate entities merged. When he acquired all of Damiano’s stock, he assumed toward the corporations the same status that Damiano held prior to that time. Equity will not permit him to assert, when it suits his interests, that the corporations were the alter ego of the stockholder, but deny that such identity exists when he has become the stockholder. When. plaintiff acquired Damiano’s stock, ■ Damiano had no further interest in the. litigation and plaintiff completely controlled Adamco and Darling, thus dominating both sides of the litigation...
As soon'as’this became'known, the receiver'should'have called to the attention of the Court the problem of the unsecured creditors, and requested the Court to protect them in the disposition of the assets of the corporation. His failure to do this earlier than he did has worked no hardship and when the existence of such Creditors was made known to the Court, the Court properly acted to protect them.. . '
Certainly, a man is not permitted to buy a mortgage upon corporate assets, then buy the stock of the corporation, and then, by voting the stock, transfer the assets to himself as an individual, thus freezing out all unsecured creditors,, when the assets far exceed the amount of the secured debt.
It is equally inequitable to accomplish this same result -by purchasing the interests of both parties to litigation and securing a decree authorizing the transfer without calling to' the attention of the Court the existence of- such unsecured creditors, who are not parties to the litigation.
*208 Plaintiff agreed with Damiano that the assets of the two corporations were worth approximately $145,000 before plaintiff’s money was put into the business.
The decree of March 16, 1954 fixes the amount of $87,966.05 as the total of all liens.
It is thus apparent that there is sufficient value in assets to protect unsecured creditors to the maximum that such claims could be established based on the receiver’s report.
The principal fault that we find with the decree attacked is that we cannot reconcile the amounts decreed in favor of named creditors with the receiver’s report, it appears that some creditors named in the receiver’s report were not protected by the decree; and the interested parties, the creditors, and Scheiner, were not called upon for proof with respect to the several claims.
 Every principle of justice, equity and fair dealings demands that the assets of Adamco and Darling be applied first to the payment of secured debts, second to unsecured debts, and only after this is done should the stockholders have any right to these assets. When plaintiff based his claim to the assets on his stock ownership and accepted a conveyance authorized by the court because of his stock ownership, he took subject to the debts of the corporation. At that time there were no adversary parties before the court. The common creditors were not parties. It would shock the conscience of a court of equity to permit them to be deprived of their property in the manner attempted by plaintiff.
On the other hand, Scheiner should be given an opportunity to be heard on the validity and amount of these claims.
Certiorari is granted and the decree of August 26, 1954 is quashed with directions that the Circuit Court require the receiver to give notice to all common creditors of Adamco, Darling and the receiver requiring them to file claims within a short time to be specified in the notice; permit Scheiner to file objections to any claim he desires to contest and when issues are thus made, conduct a hearing at which the exact amount and validity of each claim will be adjudicated. Judgment should then be entered against Scheiner with respect to each claim established.
DREW, C. J., and TERRELL, THOMAS and HOBSON, JJ., concur.
SEBRING, J., dissents.
THORNAL, J., not participating.