ANSTEAD, Judge.
This is an appeal from an order denying appellant’s claim in a receivership proceeding. We reverse.
This is the second time this matter has been before us.[1] On June 20, 1974, the appellee, Sun World Broadcasters, Inc. entered into an equipment lease with Continental Credit Corporation for the lease of broadcasting equipment, with title being retained by Continental. The lease, in turn, was assigned to RCA and finally to appellant, The Christian Broadcasting Network, Inc. Only the first monthly installment was paid on the lease. Thereafter RCA filed suit in the federal district court for breach of the lease and by order of October 3, 1975, a summary judgment was entered finding that Sun World had breached the lease. The order granted RCA the right to retake possession of the leased equipment, with the court retaining jurisdiction to determine RCA’s right to damages, attorneys fees, and costs upon subsequent motion by RCA.
On November 18, 1976, the circuit court, acting upon a petition for involuntary dissolution, appointed a receiver for Sun World and directed that any claims in the receivership be filed within four months. On March 17, 1977, RCA filed its claim in the receivership for damages from breach of the equipment lease and referred in said claim to the pending federal suit. On the same date, March 17, 1977, RCA sold the equipment to Christian and simultaneously assigned its claim for breach of the lease to Christian. The receiver filed numerous objections to the claim, many on equitable grounds, and also sought to have the claim stricken. The trial court, upon motion by the receiver, entered an order summarily striking RCA’s claim, by then assigned to Christian, concluding that the claim was an unprovable, contingent claim because the federal district court had not yet entered a judgment on RCA’s right to damages. On October 25, 1977, this court reversed the order striking the claim and remanded the cause for an evidentiary hearing. On November 22, 1977, the federal district court entered a final judgment for Christian, approving the sale of March 17 and awarding damages of $1,154,104.72. The receiver was a party to the district court action and, with the exception of the allegations that the RCA claim was “contingent”, asserted all of the same defenses to the claim he had previously raised in the receivership. The federal court considered and rejected these defenses.
On September 8, 1978, the claim came on for hearing before the circuit court and the parties stipulated into evidence the findings of fact, conclusions of law, and judgment of the federal district court. The trial court entered an order again striking Christian’s claim as a contingent, unprovable claim.
The general rule as to the allowance of claims in a receivership is set out in 75 C.J.S. Receivers § 265 (1952):
The general rule is that, in order for a claim against the fund or property in the hands of the receiver to be a provable claim, it must be either one which is actionable at the date of the receiver’s appointment, or a direct obligation at the date of such appointment, whether then due or to become due, or an unmatured obligation at the date of such appointment which has matured since that date *1347 or which will mature prior to an order of distribution or prior to the expiration of the period for the presentation of claims. It has been held that a claim is provable if its worth or amount can be determined by recognized methods of computation at a time consistent with expeditious settlement of the estate. Conversely, claims which are unascertainable and nonactionable, or indirect unmatured obligations, at such date cannot be proved. However, it has been said that the foregoing doctrine is one merely of convenience and that it does not apply where the estate is more than ample to discharge all claims.
* * * * * *
Contingent claims. A claim purely contingent, liability on which has not accrued and may never accrue, cannot he advanced for a share in the distribution; but a contingent claim which is definitely ascertainable and which will ripen into maturity during the administration so as not to interfere with an early distribution is provable. (Footnotes omitted).
Certainly RCA’s claim against Sun World was actionable at the time the receiver was appointed, on November 18, 1976. The basis of RCA’s claim, Sun World’s breach of lease, was determined in favor of RCA by summary judgment on October 3, 1976. The issue is whether the amount of RCA’s claim could be determined by a recognized method of computation at a time consistent with expeditious settlement of the estate. The receiver claims this question must be answered in the negative since the claim was not reduced to judgment in the federal district court until November 22,1977, some eight months after the claim period ended. In the November 22 judgment the federal district court concluded:
Under the decision in Bid well v. Carstens, [316 So.2d 264] supra, and the provisions of the lease agreement, the plaintiff is entitled to recover from the defendant the following:
(1)$1,195,776.00 as the present value as of 17 March 1977 of the lease payments in default, including fifteen percent simple interest;
(2) $47,830.64 as interest at six percent per annum on (1) above from 17 March 1977 to 17 November 1977;
(3) $1,098,145.00 as the present value as of 17 November 1977 of a thirty-four month stream of future rent payments;
(4) $15,136.08 as the RCA cost of removal and repossession (excluding legal costs and attorneys’ fees), and
(5) $30,000.00 as reasonable attorneys’ fees for services in this cause;
less the following adjustments:
(1) $900,000.00 as the sale price of equipment to CBN;
(2) $77,539.00 as security deposit paid by Sun World to CCC;
(3) $40,000.00 as amounts paid to RCA pursuant to Martin leases, and
(4) $215,244.00 as the value of RCA’s beneficial use of the property from 30 September 1976 to 17 March 1977, based upon the lease agreement plus fifteen percent simple interest.
The plaintiff is, therefore, entitled to recover a net judgment of $1,154,104.72, plus such costs as may hereafter be taxed in accordance with law against the defendant Sun World.
These damages were computed under a lease provision which authorized the lessor, upon default, to retake possession of the equipment and to lease or sell the same and recover from the lessee the unpaid balance of the rent. It is obvious that the court utilized the date of RCA’s sale of the equipment to Christian, March 17, 1977, as the key date for computing the net damages due. This date was of course within the claim period and was the same date the RCA claim was filed. It is apparent then, that not only could all of appellant’s gross damages have been computed on March 17, but in fact appellant’s net damages could have been computed on March 17, since all of the amounts listed under “adjustments” in the federal court’s judgment could be determined as of March 17. In other words both the gross and net amount of appellant’s claim were provable on March 17, 1977, which we believe was clearly “a time consistent with expeditious settlement of the estate.”
*1348 Under appellees’ construction of the rule for allowing claims the appellant would have had to reduce its claim to judgment before it could have been allowed. In other words instead of the claim being “provable” it must have been already “proved” and reduced to judgment. We cannot accept that construction. The claim was based on a breach of the lease. That breach made the claim actionable. The claim would have been actionable regardless of the pendency of a lawsuit for the breach. If appellees’ construction is accepted the lessor would in effect be placed in a worse position by having filed a lawsuit and secured a summary judgment than if he had merely stood by and not acted until the receiver was appointed.
 Apparently because his equitable defenses to the claim had been tried in the federal court the receiver presented no evidence on these defenses to the trial court. Nevertheless, the appellees have also urged, in essence, that it would be unfair to other creditors and to Sun World’s stockholders to allow the appellant’s claim at this late date since the entire plan of liquidation of the corporation has been carried out without consideration of the claim. In this regard we note the trial court’s comments at the close of the September 8 hearing:
From the very beginning the whole star (sic) of this matter was to get the matter into Receivership and get it concluded as fast as possible for the protection of the stockholders and the creditors and because of the machines which was a, I was persuaded at least, was a vanishing thing if things didn’t happen very quickly. That was one reason why only four months were given on the time for everyone establishing their claims.
Certainly, CBN was aware of what was going on and negotiating with the Receiver they filed their Claim on the last day, which was I guess within the limits of the law.
But, the Court is going to find that it was a contingent claim and I am not going to allow the Claim in. That will be the judgment of the Court.
Seemingly, the trial court felt the appellant was guilty of such conduct as to estop it from now collecting on its claim since, among other reasons, a sale of the corporation’s assets had already been scheduled before the claim was filed. However, we note that the district court, which did receive evidence on this issue, concluded to the contrary:
At all times subsequent to 15 February 1977 the defendant Sun World and the defendant’s receiver were on notice that RCA intended to make a private sale of the property failing a sale by the receiver. On 17 March 1977, the receiver became aware of the fact that the RCA assets had been sold to CBN and upon acquiring such knowledge deferred his proposed sale of the receivership assets for a period of one week. There is no evidence that the sale of the RCA equipment to CBN had any detrimental effect on the price later bid for the assets subject to the receiver’s control and sale. Under all the foregoing circumstances, the private sale effected by RCA to CBN was performed in a commercially reasonable manner and resulted in a fair and reasonable price for the assets.
* * * * j|< *
The court concludes as a matter of law that the evidence does not support the defense of estoppel which has been pled and argued by the defendant Sun World. The evidence reveals that at no time did RCA unconditionally agree to waive its right to enforce the debt which arose under the lease agreement or to forego its right to make a private sale of the leased chattels. The statements by Mr. Bohlen to Mr. Nobles and Mr. Maguire do not estop RCA because there is no evidence that Sun World changed its position to its detriment in reliance on such statements. Furthermore any change of position to the detriment of Sun World as a result of such statements would not have been reasonable reliance on the statements of Mr. Bohlen as a waiver either of RCA’s right to sell the equipment or to enforce the debt. The facts,
*1349 therefore, do not support the claim of promissory estoppel. Likewise, the facts presented to the court do not support a waiver by RCA of its right to enforce the debt, waiver under Florida law being an intentional relinquishment of a known right.
It appears to us that the four month period provided for in the original receivership order was for the primary purpose of allowing creditors of the corporation to put the receiver on notice as to claims against the corporation. And, until that time ended, the receiver could not safely estimate-the potential liabilities of the corporation. It makes little sense to provide for a definite period in which claims may be filed and still charge a claimant with being “too late” with his claim when he files it within the time allowed. Receiverships are supposed to be conducted primarily for the benefit of the creditors and secondarily for the benefit of the stockholders. Schemer v. Adamco, Inc., 81 So.2d 205 (Fla.1955). In a somewhat similar situation the Second District Court recently commented on this issue in the case of First Wisconsin National Bank of Milwaukee v. First National City Bank, 353 So.2d 960 (Fla. 2d DCA 1978):
Appellant attempted in good faith to file its claim for consideration by the receiver and the court. The door should not have been shut to appellant merely because of impatience or desire to terminate the proceedings. The contention that the period of receivership would be extended by presentation of appellant’s claim is on balance clearly outweighed by principles of fairness and reasonableness. (Id. at 961)
We also note that the four months allowed for filing claims herein is the minimum time permitted by Section 607.284, Florida Statutes (Supp.1976), for filing claims.
All of this is not to say that there may well be an instance when time is so critical that a claimant’s inability to promptly establish his claim, after it has been timely filed, might require that a trial judge properly deny the claim. But there was no evidence of such a circumstance presented here. Moreover, the federal district court has come to a contrary conclusion that “there is no evidence that Sun World changed its position to its detriment” because of any actions by RCA.
Since the amount of the claim was capable of being determined on March 17, 1977, we believe it was error for the trial court to strike the claim. Accordingly, the order of the trial court is reversed with directions for further proceedings consistent herewith.
DAUKSCH and LETTS, JJ., concur.

. The Christian Broadcasting Network, Inc. v. Sun World Broadcasters, Inc., 353 So.2d 560 (Fla. 4th DCA 1977).